**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **Docket # 13-CR-00004-GKF** |
| | ) | |
| TARRAN ARNEL BRINSON, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

1.   Patrick Michael Megaro, Esq., an attorney duly admitted to practice law in the United States District Court for the Northern District of Oklahoma, and admitted before this Court Pro Hac Vice, hereby respectfully submits this Memorandum on behalf of the Defendant, Tarran Arnel Brinson.   The following exhibits are attached hereto and incorporated by reference:

## I. PRELIMINARY

2.   On January 11, 2013, a two-count Indictment was filed charging Tarran Brinson. Count One charged Mr. Brinson with Attempted Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), and 1594(a).   Count Two charged Mr. Brinson with Interstate Travel and Transportation in Aid of Racketeering Enterprises in violation of 18 U.S.C. §§ 1952(a)(3) and 1952(b)(1).   Mr. Brinson was arrested January 30, 2013 pursuant to a warrant and appeared on that date before United States Magistrate Judge Frank H. McCarthy for an Initial Appearance and Arraignment on the Indictment. He pleaded not guilty and was ordered held pending a detention hearing.

3.   On February 4, 2013, Mr. Brinson was named in a three-count Superseding Indictment. Count One charged Mr. Brinson with Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), and 1594(a). Count Two was identical to Count Two if the original indictment. Count Three charged Mr. Brinson with Endeavoring to Obstruct Justice in violation of 18 U.S.C. §§ 1503(a) and 1503(b)(3). On February 5, 2013, Mr. Brinson appeared before Judge McCarthy on the Superseding Indictment, pleaded not guilty, and was released on a $10,000 unsecured bond.

4.   On March 7, 2013, Mr. Brinson was named in a Second Superseding Indictment. Counts One and Two were identical to those in the Superseding Indictment except for the dates charged. Count Three was identical to Count One of the original indictment. Count Four charged Mr. Brinson with Coercion and Enticement in violation of 18 U.S.C. § 2422(b).   Count Five charged Mr. Brinson with Obstruction of Justice in

violation of 18 U.S.C. § 1591(d). Count Six was identical to Count Three of the Superseding Indictment.  On March 12, 2013, Mr. Brinson appeared before Judge McCarthy for Arraignment, pleaded not guilty, and was released on the remaining bond.

5.   On May 8, 2013, Mr. Brinson was named in a seven-count Third Superseding Indictment. Count #1 charged Mr. Brinson with Conspiracy to Engage in Sex Trafficking in violation of 18 U.S.C. § 1594(c) and Criminal Forfeiture in violation of 18 U.S.C. § 1594(d).  Count #2 was identical to Count #1 of the Second Superseding Indictment. Count #3 was identical to Count #2 of the Second Superseding Indictment. Count #4 was identical to Count #3 of the Second Indictment. Count #5 was identical to Count #4 of the Second Superseding Indictment. Count #6 charged Mr. Brinson with Obstruction of Justice in violation of 18 U.S.C. § 1591(d). Count #7 charged Mr. Brinson with Obstruction of Justice in violation of 18 U.S.C. §§ 1503(a) and 1503(b)(3). On May 28, 2013, at the conclusion of a jury trial held before Chief United States District Court Judge Gregory K. Frizzell, Mr. Brinson was found guilty of Counts #1-6 of the Third Superseding Indictment. Count #7 was dismissed by the Court on May 23, 2013, and Mr. Brinson was ordered held pending sentencing.

6.   For the reasons set forth in this Memorandum, the defense respectfully requests that this Court

(A)  Impose a sentence of imprisonment for a period of ten (10) years followed by five (5) years of supervised release; or in the alternative;

(B)  Impose a sentence at the low end of the applicable Guidelines, and

(C) Direct the Attorney General to place the Defendant in a Federal Correctional Institution within Oklahoma, or at a location as geographically close as possible to Tulsa to permit the Defendant's family and friends to visit him without undue burden or hardship;

(D)  impose no fine or financial penalty at sentence, other than the mandatory $740 restitution, due to Defendant's inability to pay such a fine;

(E)  recommend to the Bureau of Prisons that Defendant be permitted to enroll in all available vocational and educational training programs, and rehabilitation counseling that are available; and

(F)  grant such other and further relief that this Court may deem just and proper.

## II. STATUTORY FACTORS FOR THE COURT TO CONSIDER

7.  18 U.S.C. § 3553(a) sets forth factors for the Court to consider in imposing sentence.  An application of these factors to the facts of the instant case is provided as follows.

2

*1. Nature and Circumstances of the Offense and the
History and Characteristics of the Defendant*

8.  The United States Supreme Court has held that

[a] sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. **Highly relevant - if not essential - to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics**. Williams v. New York, 337 U.S. 241, 247 (1949) (emphasis added)

a.  Family/Personal History

9.  Mr. Brinson was born in Center, Texas, on May 14, 1989, and was raised by his mother, Angel Brown nee Harrison.  His parents divorced when he was five years old and he has had no contact with his father since that time. Mr. Brinson has two older siblings, Ursula Brinson, 25, who lives in Atlanta, Georgia, and Jacory Brinson, 23, who lives in Tulsa, Oklahoma.

10.  He moved to Atlanta, Georgia, with his mother and siblings following the divorce and lived there until 2011 when he moved to Tulsa, Oklahoma.  His family was poor growing up but always had the necessities.  His mother married Jimmy Lee Brown when Mr. Brinson  was a teenager and their financial situation improved significantly as a result.

11.  He has been in a close monogamous relationship with Kianna Randle for about 18 months.  His girlfriend lives in Okmulgee, Oklahoma and works as a clerical assistant at the regional hospital there, and remains supportive.

b.  Employment/Educational History

12.  Mr. Brinson  was home-schooled and earned a diploma in 2006.  He otherwise has few special skills. Mr. Brinson 's mother and step-father purchased a commercial janitorial franchise. Mr. Brinson  worked as a floor waxer in the family business from late 2011 until his arrest.  He has otherwise not held any jobs.

c.  Offense Conduct

13.  The offense conduct is detailed in the Pre-Sentence Report, Paragraphs #10-15.  However, the defense has an objection to a factual assertion contained in Paragraph

14.  The defense stresses that the crimes for which the Defendant stands convicted do not involve any acts of violence, weapons, or threats of violence, nor are these crimes involving the distribution of narcotics or narcotics-related offenses.

*B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense,*
*to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

15.   Mr. Brinson's criminal history prior to the instant offenses has been nearly spotless. Despite growing up in a broken home under considerable financial challenge, Mr. Brinson never had any trouble with police or involvement in the court system as a juvenile. There is a single adult adjudication for possession of less than one ounce of marijuana when he was 21 years old, a crime that in a growing number of states nationwide is no longer considered criminal or even illegal. That case was continued without a finding of guilt and Mr. Brinson was placed on probation for a year. He was discharged early after only four months.

16.   Mr. Brinson understands that as a result of his conviction, his criminal record will reflect a Federal conviction for conspiracy, obstruction of justice, and sex trafficking and that if he is re-arrested for any crime in the future, these convictions will probably serve to act as an enhancement of any future sentence, which may be greater than the sentence he will receive in this case. This is more than sufficient to deter him from the commission of future crimes.

17.   Not only will the passage of time and the wisdom of age and experience ensure that Mr. Brinson will not re-offend in the future, but the character and intelligence level of this particular Defendant will ensure that the public will not face any future threat from him.

18.   Based upon all of these factors, there is no need to impose a sentence of imprisonment more than a minimal period for the purpose of protecting the public from Mr. Brinson.

*C. The Need for the Sentence Imposed to*
*Afford Adequate Deterrence to Criminal Conduct*

19.   General or indirect deterrence focuses on general prevention of crime by making examples of specific offenders.  The individual defendant is not the focus of the attempt at behavioral change, but rather receives punishment in public view in order to deter other individuals from future criminal conduct.

20.   It has been argued that specific deterrence is ineffective at achieving its ultimate goal.  Critics of specific deterrence argue that offenders do not pause to consider the possible punishment for a crime they are about to commit, especially in the heat of the moment, and when drugs or alcohol are involved to handicap one's judgment.  Some suggest that potential offenders are more likely to be deterred by the threat of being caught rather than the threat of punishment, citing an example of the crime rate falling dramatically in areas where closed-circuit television surveillance systems were introduced.  General deterrence has also been heavily criticized for relying on publicity of heavy punishments; it has been described as "the least effective and least fair principle of

sentencing." Martin, Jacqueline (2005). The English Legal System (4th ed.), p. 176. London: Hodder Arnold. ISBN 0-340-89991-3.

21. Whatever the viewpoint, imposing the sentence recommended by the defense in this particular case is sufficient to achieve that penological goal and deter other wrongdoers from engaging in similar conduct.

*D. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant*

22. As detailed above, the sentence recommended by the defense is more than adequate to not only deter any future commission but, as this case does not involve a crime of violence in the first place, and there is nothing in Mr. Brinson's past to suggest he is violent or poses a threat, the recommended sentence proposed by the defense is more than adequate to protect the public from any perceived threat of future crimes by Mr. Brinson. He will be incarcerated for several years at a minimum, and then subject to close supervision following his release. Accordingly, the public is ensured that it will face little or no detriment from Mr. Brinson for several years, a significant time period.

23. Moreover, during that period of incarceration, Mr. Brinson will have matured by virtue of age, experience, and the programs and conditions of incarceration, which he plans to take advantage of to better himself. Mr. Brinson also recognizes that this conviction and sentence has effectively removed him from the possibility of committing any crimes in the future for a number of reasons. He understands that this conviction will more than likely enhance the severity of any future sentence.

24. That said, there is no need to impose a harsher sentence than the recommended sentence proposed by the defense to protect the public from the Defendant, particularly in light of the fact that the Defendant does not stand convicted of any crime of violence or drug-related crime.

*E. The Need for the Sentence Imposed to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner*

25. As indicated in the PSR, the Defendant has limited education and vocational training. The defense respectfully urges this Court to recommend that the Bureau of Prisons provide the Defendant with vocational training and additional education do that upon his release, Mr. Brinson is able to enter society with value-added purpose.

26. Additionally, as indicated in Paragraph # 51 of the PSR, Mr. Brinson began using marijuana at approximately age 20 and was regularly using the drug at the time of his arrest. He recognizes that at this point, his drug use is limited and that with proper counseling and treatment, he can gain control of this aspect of his life and turn away from drug use altogether. The defense respectfully requests that this Court recommend treatment for this condition by the Bureau of Prisons.

27.   Mr. Brinson has expressed a strong desire to live a drug-free, productive and purpose-driven life.  Thus, the recommended sentence proposed by the defense herein will provide Mr. Brinson with the means and opportunity to validate his choice to set his life on the right path.  While some incarceration is warranted, and Mr. Brinson knows and accepts this, a prolonged period of imprisonment will likely be counterproductive at best.  A prolonged sentence of incarceration is not necessary to achieve the goals of punishment, deterrence, and rehabilitation.

### F.  The Kinds of Sentences Available

28.   Because the Defendant is convicted of non-violent, non-drug felonies, this Court has wide discretion in imposing a sentence.  The legally permissible sentences are as follows:

(a) a maximum term of incarceration of life imprisonment on Count One, 18 U.S.C. § 1594(c), followed by a term of supervised release of not more than five (5) years, 18 U.S.C. § 3583(b)(1), not more than a $250,000 fine and $100 Special Monetary Assessment;

(b) a sentence of incarceration with a range of  ten (10) years to life imprisonment on Count Two, 18 U.S.C. §§ 1591(a)(1) and 1594, followed by a term of supervised release of at least five years and up to life, 18 U.S.C. § 3583(k), not more than a $250,000 fine and $100 Special Monetary Assessment;

(c)  a sentence of incarceration with a maximum term of five (5) years on Count Three, 18 U.S.C. §§ 1952(a)(3) and 1952(b)(1), followed by a term of supervised release of not more than three (3) years, not more than a $250,000 fine and $100 Special Monetary Assessment;

(d) a sentence of incarceration with a range of  ten (10) years to life imprisonment on Count Four, 18 U.S.C. §§ 1591 and 1591(b)(2), followed by a term of supervised release of at least five years and up to life, 18 U.S.C. § 3583(k), not more than a $250,000 fine and $100 Special Monetary Assessment;

(e) a sentence of incarceration with a range of  ten (10) years to life imprisonment on Count Five, 18 U.S.C. § 2422(b), followed by a term of supervised release of at least five years and up to life, 18 U.S.C. § 3583(k),  not more than a $250,000 fine and $100 Special Monetary Assessment;

(f)   a maximum term of incarceration of twenty (20) years on Count Six, 18 U.S.C. § 1591(d), followed by a term of supervised release of not more than three (3) years, not more than a $250,000 fine and $100 Special Monetary Assessment.

### III. MITIGATING FACTORS

29. The defense has identified a number of mitigating factors for this Court to consider in sentencing Mr. Brinson, as detailed below.

*A. Defendant's Conduct Was the Result of Circumstances Unlikely to Recur*

30. As stated above, Mr. Brinson understands that his criminal record will reflect several Federal convictions for conspiracy, obstruction of justice, and sex trafficking. Any future criminal conviction, particularly any conviction for related offenses, will likely be enhanced as a result of this conviction. With this understanding in mind, the circumstances that gave rise to the instant offense are unlikely to recur.

31. Mr. Brinson further understands that it is a virtual certainty that his sentence will include some form of significant period of incarceration followed by intensive supervision. Mr. Brinson knows that with a prior criminal record, and being subjected to Supervised Release, he will be subject to intense scrutiny. That said, it is unlikely that he would re-offend because he will be so closely monitored and would be and is motivated to live a law-abiding life.

32. In any event, Mr. Brinson is committed to completing his period of incarceration and post-release supervision with the insight and maturity that can only come with life experience, and since he will be older, wiser, and more experienced, he will be able to appreciate the pitfalls that resulted in the instant prosecution develop well in advance and he will be well equipped to avoid them. Because of these developments, it is highly unlikely that he will ever place himself in a future position where he would be involved in this type of criminal activity.

*B. The Character and Personality Traits of the Defendant Indicate that He is Unlikely to Reoffend and Commit Future Crimes, or that He is a Danger to the Community*

33. The crimes for which Mr. Brinson stands convicted are non-violent, non-drug offenses. Accordingly, Mr. Brinson is not a danger to the community. There is nothing in his past to suggest he is violent and as detailed passim, the defense respectfully suggests there is little chance Mr. Brinson will re-offend in the future.

*C. The Defendant's Character and Attitude Indicate That He is Unlikely to Re-Offend*

34. Mr. Brinson's family situation and the support he enjoys from his relationships with his siblings and his girlfriend all suggest he will be highly motivated and committed to taking every advantage he can while incarcerated to better himself and to re-commit himself to living a law-abiding life. The instant ordeal that resulted in his conviction is an anomaly, an aberration, and completely out of character. He is resigned to his present fate but also remains steadfast in his commitment to never return to prison again. He draws strength and resolve from the support of his family as evidenced by the attached letters, collectively appended hereto.

35.     His family remains his steadfast in their support.  The Court is respectfully referred to the letters of recommendation that are attached to this memorandum as evidence of the support Tarran has.  Rather than repeat the content of the letters, several highlights are set forth here:

> "Since Tarran was all of three years old and saw a commercial on television for hungry children in Africa and said "I want to help those kids when I grow up" we knew that Tarran was a kind-hearted child. We know that Tarran is a very good young man and that putting him away amongst criminals and people accustomed to life in prison isn't good for him as it will potentially scar him for life and condition him to a lifestyle he wasn't raised to partake in. Tarran has grown up around nothing but positivity as we are a closed family and support each other in positive endeavors. Tarran is very goal oriented and has a lot more to offer this world. (Letter from Jim and Angel Brown, Tarran's parents)

> "Tarran has always stood by my side and made sure I was alright our entire lives. Tarran has and will always be my role model.  When we were eight and nine we worked as mentors to other boys our age or younger helping them cope with not having parental figures, feeling alone in this large world, lacking confidence and knowledge in terms of reading and writing. Tarran was able to work with these young men and help them feel great about themselves and no longer feel alone because thanks to Tarran they knew there was a God and most of all they knew they had a friend to help them along the way.  Tarran is the kindest guy I know and I hope and pray that I'm even half the man he is." (Jacory Brinson, Tarran's brother)

> "When I was about ten Tarran and my other brother Jacory and I worked actively in our community in Georgia. I remember Tarran coming up with the brilliant idea one Christmas to take our toys we were blessed with and go to a less fortunate neighborhood and hand out the toys to the children there.  I still remember the first toy I gave away that Christmas and the joy on that little girl's face that I handed my Porcelain doll to literally sent chills up my spine. Tarran is a great young man and has always been a positive leader amongst his peers. I can't thank Tarran enough for what he taught me when we were younger and for the lessons he continues to teach me on a daily basis." (Ursula Harrison, Tarran's sister)

*D. Excessive Imprisonment Would Entail Excessive Hardship to Himself*

36.   Mr. Brinson understands and accepts that potentially he faces a period of incarceration that will remove him from his family and loved ones for much of his young

adult life.  Mr. Brinson has never served time in prison but knows all of the hardship that he will face.  Every day, Mr. Brinson will awake and face a life choice: do I stay on this path toward returning one day to society as a better and changed person or do I choose to give up, turn my back on the love and support of family and friends, and become just another statistic lost in the federal prison system?

37.  Mr. Brinson's life will be placed on hold for a significant amount of time.  He knows and appreciates the sobering reality he faces.  However, excessive imprisonment beyond the recommended sentence proposed by the defense would be completely counterproductive at this stage in Mr. Brinson's young life.

38.  Further, Mr. Brinson's inevitable absence due to this offense will certainly create a void in the lives of his family members, particularly, his parents, as well as his girlfriend, all of whom are in need of his emotional support.  To deprive his family of this support for an excessive period of time would certainly hinder their relationships, particularly the strong but still fragile relationship Mr. Brinson enjoys with his girlfriend.

### IV. LACK OF AGGRAVATING FACTORS

39.  The defense respectfully submits that there are no aggravating factors for this Court to properly consider.  Assuming arguendo that there is an aggravating factor, it would be substantially outweighed by the mitigating factors set forth herein.

### V. ADDITIONAL CONSIDERATIONS

40.  In a speech given at the 2003 American Bar Association Annual Meeting, Supreme Court Justice Anthony Kennedy delivered the keynote address, challenging the legal profession and the ABA to begin a new public discussion about American sentencing and corrections policies and practices.  In discussing the problems plaguing our present criminal justice system, he stated:

Our *resources are misspent, our punishments too severe, our sentences too long*.

41.  Justice Kennedy also stated candidly that **"*every day in prison is much longer than most any day you have ever spent.*"**  In response to Justice Kennedy's comments, the Justice Kennedy Commission was formed in 2004, which set forth the following recommendations in their report to the United States House of Representatives:

- Lengthy periods of incarceration should be reserved for offenders who pose the greatest danger to the community and who commit the most serious offenses

- Alternatives to incarceration should be provided when offenders pose a minimal risk to the community and appear likely to benefit from rehabilitation efforts

42.  Although public safety is a major public concern, the public also believes in rehabilitation.  In a recent nationwide survey conducted by the National Center for State

Courts, almost 80% of 1,502 people surveyed believed that under the right conditions, many offenders can turn their lives around and become productive, law-abiding citizens. 88% believe that rehabilitation and treatment programs should often be used as alternatives to prison. 77% said that they prefer their tax dollars be spent on programs to help offenders find jobs or obtain treatment rather than on building more prisons. Those surveyed also favored a balanced approach to public safety, "one that is tough, especially on the most violent, dangerous or threatening offenders, but one that also encourages less serious offenders to turn their lives around."

## VI.  OBJECTIONS TO PRE-SENTENCE REPORT
## AND APPLICATION FOR DOWNWARD ADJUSTMENT

43.   The defense has submitted several objections to the Pre-Sentence Report via letter dated August 26, 2013.  USPO Ashley Schneeberg participated in a telephone conference with counsel to discuss the objections.  A revised Pre-Sentence Investigation Report was completed on September 3, 2013.  A copy of Defendant's objections are attached hereto.

44.   Defendant first requests that this Court give him credit for custody since his conviction on May 28, 2013.

45.   Defendant objects to Paragraph #27 and the enhancement under Guideline 3Cl.1. It is the Defendant's position that this enhancement constitutes impermissible double-counting.  Mr. Brinson was found guilty of a single count of obstruction of justice and this is considered in the Base Offense Level calculation.  It is also double-counted as part of the Specific Offense Characteristic and is impermissible because Guideline 3C1.1 has already fully accounted for the harm contemplated by the crime.

46.   Double-counting is not permissible where "the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap are indistinct and serve identical purposes." United States v. Rucker, 178 F.3d 1369, 1371 (10th Cir. 1999).  Here, Mr. Brinson's conviction on Count #6 is punished by the base offense calculation and at the same time, for the same offense conduct, the conviction is being enhanced under a separate enhancement provision.

47.   The Defendant objects to Paragraph #41. The Defendant's position is that his Guidelines Calculation should be as follows:

| | | |
|---|---|---|
| Base Offense Level | - | 36 |
| Acceptance of Responsibility | - | -1 |
| Adjusted Offense Level | = | 37 |

48.   With a Criminal History Category I, the Defendant's Guidelines Range under the alternative referenced above should be 210-262 months imprisonment.

49.   The defense respectfully asks this Court to consider several factors that may warrant a sentence outside of the Guidelines.  Several facts identified within the PSR would justify a non-Guidelines sentence:

(a)  Mr. Brinson, despite growing up in a single-parent household with limited financial means, he remained committed to staying out of trouble.  His lack of **any** juvenile record is a testament to his character.

(b)  Mr. Brinson has a minimal adult criminal history.  A single adult adjudication reflects a charge for possession of less than one ounce of marijuana, a charge that in a growing number of states is no longer criminal and even not illegal in a few states.  There is nothing in Mr. Brinson's background that suggests this episode is anything but an aberration.

(c) Mr. Brinson has been a regular marijuana user since approximately 20 years of age and although challenging, this drug use has not expanded to other, harder drugs.  Given this scenario, Mr. Brinson is likely to benefit significantly from intervention and counseling, something he has not received to date.

(d)  Mr. Brinson was home-schooled and completed an accredited certificate program in 2006 but has no other education or special vocational training.

## VII. ASSESSMENT SUMMARY & CONCLUSION

50.  Since I began representing Mr. Brinson, I have received unqualified support from his family and close friends.  Mr. Brinson benefits from a strong family support system as well as from close friends including his girlfriend.

51.  Mr. Brinson's plans for the future include treatment for his substance abuse, obtaining additional vocational training, possibly completing additional education, and obtaining gainful employment immediately upon his release from custody.  He plans to repair his relationship with his family who continue to give him unconditional love and support.

52.  Mr. Brinson has the ability to re-enter society and become a productive individual.  He fully understands that if this Court were to give him leniency to reform his life and make the necessary positive changes, there would be no second chances.  He knows he has a lot at stake and he truly believes that he has the ability to meet this challenge.  The sooner he is given the opportunity, the sooner he will re-enter society as a productive member and prove himself to this Court, to his family, and to the community.

53.  Sentencing reform has tried to implement into practice a basic penological theory that comports with American Constitutional ideals of due process of law and equal protection of the law – that the punishment should fit the crime and the individual.  The United States Supreme Court recognized this principle that "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.  The belief no longer prevails that every offense in a like legal category calls for an identical

punishment without regard to the past life and habits of a particular offender." <u>Williams v. New York</u>, 337 U.S. 241, 248 (1949).

54.   Based upon all of the information that this Court has at its disposal, the sentence proposed above is more than sufficient to meet the goals of sentencing without unduly harsh punishment for the crime.  As such, the defense respectfully requests that this Court sentence Mr. Brinson as follows:

(A)  Impose a sentence of imprisonment for a period of ten (10) years followed by five (5) years of supervised release; or in the alternative

(B)  Impose a sentence at the low end of the applicable Guidelines, and

(C) direct the Attorney General to place the Defendant in a Federal Correctional Institution within Oklahoma, or at a location as geographically close as possible to Tulsa, Oklahoma, to permit the Mr. Brinson's family and friends to visit him without undue burden or hardship;

(D)  impose no fine or financial penalty at sentence, due to Defendant's inability to pay such a fine;

(E)  recommend to the Bureau of Prisons that Defendant be permitted to enroll in all available vocational and educational training programs, and rehabilitation counseling that are available; and

(F)  grant such other and further relief that this Court may deem just and proper.

Dated: Winter Park, Florida
October 25, 2013                         Respectfully Submitted,

                                          */s/ Patrick Michael Megaro*
                                          **Patrick Michael Megaro, Esq.**
                                          BROWNSTONE, P.A.
                                          Attorneys for Defendant
                                          400 North New York Avenue, Suite 215
                                          Winter Park, Florida 32789
                                          (o) 407-388-1900
                                          (f) 407-622-1511
                                          Patrick@brownstonelaw.com



August 26, 2013

Senior USPO Ashley Schneeberg
United States Department of Probation
333 West Fourth St., Room 3820
Tulsa, OK 74103
VIA ELECTRONIC MAIL - ashley_schneeberg@oknd.uscourts.gov

**Re:**              **United States v. Tarran Arnel Brinson**
**Docket #**         **4:13-CR-00004-001**
**Sentencing Date:** **November 6, 2013 at 2 p.m.**

Dear Ms. Schneeberg,

As you are aware, this firm represents Tarran Brinson in the above-referenced case. Please accept this letter as the Defendant's objections to the Pre-Sentence Report (PSR) prepared and filed by your office pursuant to Federal Criminal Procedure 32(f).

Defendant **objects** to the factual allegations contained in Paragraph # 15 under Offense Conduct. This factual statement was the predicate for Count Seven of the Third Superseding Indictment, which count was dismissed by the Court. Further and as a result, there can be no adjustment for obstructing justice as identified in Paragraph # 17. This paragraph parrots the factual predicate of Count 7 which was dismissed by the Court.

The Defendant, as you are aware, proceeded to trial on the seven-count Third Superseding Indictment. The Defendant was found guilty on May 28, 2013, after a trial on Counts One through Six. Count Seven was dismissed by the Count on May 23, 2013. (PSR, Pg. 7 @ ¶8). The Court's action is a clear and direct statement that, as a matter of law, the Government lacked even probable cause to proceed on this count, a standard well below that required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

*Apprendi* supports the Defendant's position that any increase in the Guideline level for a fact neither proven beyond a reasonable doubt at a jury trial nor conceded by the Defendant is violative of the Sixth Amendment to the United States Constitution and should not be considered by this Court in aid of sentencing. Not only was there insufficient evidence to prove the facts beyond a reasonable doubt, the Court's ruling to dismiss this count before trial reflects the fact that there was insufficient evidence to even suggest probable cause that the factual allegations were true.

PRIDE, PASSION, AND THE PURSUIT OF WINNING THE ARGUMENT ON APPEAL

Phone 407.388.1900 • Fax 407.622.1511
400 North New York Ave., Suite 215 • Winter Park, Florida 32789
**www.brownstonelaw**.com

Because Count Seven was dismissed before trial, there was no evidence presented to support the allegation and as a result, there can be no adjustment for obstruction of justice predicated on this unsupported claim. (PSR, Pg. 10 at ¶17). Therefore Defendant objects to the two-point increase identified in Paragraph 27. There is no factual predicate identified anywhere in the report to substantiate any enhancement for this alleged crime.

Additionally, Defendant **objects** to the enhancement for obstruction of justice (PSR, Pg. 12 at ¶27 on the grounds that it constitutes impermissible double-counting. In this case, Defendant was found guilty of a single count of obstruction of justice. Double-counting the Base Offense Level and the Specific Offense Characteristic is impermissible because Guideline 3C1.1 has already fully accounted for the harm contemplated by the crime.

Double-counting is not permissible where "the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct and serve identical purposes." *United States v. Terrell*, 608 F.3d 679, 683 (10th Cir. 2010); *United States v. Rojas*, 531 F.3d 1203, 1207 (10th Cir. 2008); *United States v. Rucker*, 178 F.3d 1369, 1371 (10th Cir. 1999). Here, the Defendant's conviction on Count Six is punished by the base offense calculation and at the same time, for the same offense conduct, is being enhanced under a separate enhancement provision.

Based upon my calculations, the Defendant's Adjusted Offense Level should be 36 with an increase of 1, bringing his Combined Adjusted Offense Level to 37. With a Criminal History Category I, his Guideline Sentence range should be 210-262 months.

It is my intention to prepare a separate memorandum and motion for downward departure prior to sentencing, which will be sent to you, the United States Attorney, and the Court as well. I ask that you please revise the PSR in the interim. Should you have any questions or require any additional information please feel free to contact me at the above telephone number. Thank you.


Very Truly Yours,

BROWNSTONE, P.A.

Andrew Greenlee, Esq.

ATTACHMENTS:

LETTER OF RECOMMENDATION (3)

To: The Honorable Judge Gregory K. Frizzell,

We are Jim and Angel Brown, the parents of Tarran Brinson. We are writing this letter today as plea for leniency in the sentencing of Tarran as we know that these actions are far from the character of our son. Since Tarran was all of three years old and saw a commercial on television for hungry children in Africa, and said "I want to help those kids when I grow up." We knew that Tarran was a kind hearted child. Tarran has been involved in his community since the age of nine when he actively worked with our youth organization called the Jim Brown Self-Discipline Youth Foundation founded in 1999 in Atlanta, Georgia and is an organization for disadvantaged youth. We are soon going to rebirth this Organization and would very much need Tarran's assistance with these youth as he was able to reach children whom were deemed unreachable even by their own parents; helping children in the Dunbar neighborhood Youth center in Atlanta, Georgia, feeding the hungry with the Hosea Feed the hungry group, volunteering to give his toys and clothes he got for Christmas for a child in need. Tarran has always been one of the most helpful, caring and respectable young men we have known and he is our own son.

We know that Tarran is a very good young man and that putting him away amongst criminals and people accustomed to the life in prison isn't good for him as it will potentially scar him for life and condition him to a lifestyle that he wasn't raised to partake in. Tarran has many people in Atlanta, Georgia who he has touched their lives and their hearts in some way for the better. We need more young men like Tarran to set positive examples for youth and men in his age group. Tarran has grown up around nothing but positivity as we are a close family and support each other in positive endeavors. Tarran is very goal oriented and has a lot more to offer this world and we don't feel that he needs to be exposed to a negative world but if he must be exposed to this negative world we ask that his time be the minimum time possible.

Tarran has two other siblings as well of which he is the middle child. Our oldest daughter Ursula has two little girls age four and two. Tarran has been there every step of the way in terms of helping Ursula with her kids he loves his nieces and he loves his sister. Tarran has a respect for women like no other man we have known. Tarran cares for his nieces and talks to them with so much passion and care as he does his sister. That's how we know that the actions he is being sentenced for isn't something that he would even engage in so again We ask that you consider all the good that Tarran has done when making your decision.

Thanks Respectfully,

Jim & Angel Brown

To: The Honorable Judge Gregory K. Frizzell,


      Hi this is Jacory Brinson the brother of Tarran Brinson. I'm writing you today to let you know a little bit about my brother. Tarran is a very helpful and loving person. Tarran has always stood by my side and made sure I was alright our entire lives. Tarran and I are very close as a matter of fact we are closer than the rest of our family, and we come from a very close family. When people see us they think of us as twins as we look and act so much alike. We were raised to be respectful God fearing young men who have nothing but respect for others especially those of the opposite sex. This brings me to the major point of my letter. Tarran has so much respect for women that I know these accusations he is being sentenced for aren't at all compliant with his behavior. Tarran doesn't even possess a spirit of hurt yet a major spirit of love.

      Tarran doesn't even like to see men mistreating women he will try and speak something positive to a man he sees mistreating a woman. Tarran has and will always be my role model he's my big brother and his sense of positivity and worry free attitude is what I long to possess as I want the level of peace my brother possesses. Judge I ask that you really look at the fact that my brother doesn't even have a record and further at the great he has done in the community. I mean when we were eight and nine we worked as mentors to other boys our age or younger helping them cope with not having parental figures, feeling alone in this large world, lacking confidence and knowledge in terms of reading and writing on their levels. Tarran was able to work with these young men and help them feel great about themselves and no longer feel alone because thanks to Tarran they knew there was a God and most of all they knew they had a friend named Tarran Brinson to help them along the way.

      Tarran is the true definition of love he's patient and never judgmental. Tarran is the kindest guy I know I hope and pray that I'm even half the man he is. I'm asking you to take all this into consideration and sentence him the least you can as he doesn't belong in a place like prison as it isn't a place for good people, and in my opinion and a lot of other peoples opinion Tarran is a great guy and doesn't deserve being tainted with the walls of prison.


                                Thank you,

                                Jacory Brinson

To: Honorable Judge Gregory K. Frizzell

      This is Ursula Harrison I am the sister of Tarran Brinson. I'm writing today to enlighten you about who my brother is as person, for we were all raised the same but Tarran has and will always possess the gift of helping others. When I was about ten Tarran and my other brother Jacory and I worked actively in our community in Georgia. I remember Tarran coming up with the brilliant idea one Christmas to take our toys we were blessed with and go to a less fortunate neighborhood and hand out the toys to the children there. Initially I was like no way I'm giving my toys to anyone else, but Tarran constantly reminded me how great I would feel after giving my toys to a peer that had never gotten a toy for Christmas let alone on a day to day basis. I still remember the first toy I gave away that Christmas and the joy on that little girls face that I handed my Porcelain doll to literally sent chills up my spine. In that moment I hugged my brothers and told Tarran thank you over and over again. Tarran has always been like an older brother to me even though I'm the oldest of us three. Even throughout my military career Tarran gave me encouraging words that motivated me on a daily basis to complete and face any obstacle I was challenged with.

      Tarran is great young man and has always been a positive leader amongst his peers. He's always been the type of person to give someone his last even when someone else may perceive the jester of kindness as being a fool or getting used. Tarran always gave and always will it's in his nature. Honestly because of the simple act of selflessness taught to me by not only my parents but someone younger than me who just so happened to be my younger brother has positioned me to live the life I live now and taught me the value of giving versus receiving. I can't thank Tarran enough for what he taught me when we were younger and for the lessons he continues to teach me on a daily basis. Tarran loves the two little girls God has blessed to be the mother of and has always been there for me.

      The main point of my letter to you today is to ask that you consider all the good my brother has done and will continue to do during your sentencing of him. Tarran is a good person and good people don't belong in a place designed for those who lack discipline or are disobedient to the laws. I hope and pray that you make the best decision for the sake of a young man who has done nothing but good for his community and will continue to prove to be a valuable asset to his community and additional communities to follow.

                                    Thanks Kindly,

                                      Ursula Harrison