IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,     )
                            )
          Plaintiff,     )
                            )
-vs-                     )  No. 13-CR-04-GKF
                            )
TARRAN ARNEL BRINSON,     )
                            )
          Defendant.     )


TRANSCRIPT OF SENTENCING HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**
**UNITED STATES DISTRICT JUDGE**

NOVEMBER 6, 2013


*REPORTED BY:*   *BRIAN P. NEIL, RMR-CRR*
                     *United States Court Reporter*

1                         A P P E A R A N C E S

2

3

        **Danny C. Williams,** U.S. Attorney, **Trent Shores** and
4   **Clint Johnson,** Assistant U.S. Attorneys, 110 West
    Seventh Street, Suite 300, Tulsa, Oklahoma, 74119,
5   attorneys on behalf of the Plaintiff;

6       **Patrick M. Megaro**, Attorney at Law, Brownstone Law
    Firm, 400 North New York Avenue, Suite 215, Winter
7   Park, Florida, 32789, attorney on behalf of the
    Defendant;

8
        **Stephen P. Gray**, Attorney at Law, Gray &
9   Associates, 3101 North Hemlock Circle, Suite 112,
    Broken Arrow, Oklahoma, 74012, attorney on behalf of
10  the Defendant;

11      **Allen M. Smallwood,** Attorney at Law, 1310 South
    Denver Avenue, Tulsa, Oklahoma, 74119, attorney on
12  behalf of the Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | Wednesday, November 6, 2013 |
| 2 | * * * * * |
| 3 | DEPUTY COURT CLERK:  We're here in the |
| 4 | matter of the United States of America v. Tarran Arnel |
| 5 | Brinson, Case No. 13-CR-04-GKF.  Will the parties |
| 6 | please enter their appearance? |
| 7 | MR. JOHNSON:  Good afternoon, Your Honor. |
| 8 | Clint Johnson, Danny Williams, and Trent Shores on |
| 9 | behalf of the United States. |
| 10 | THE COURT:  Good afternoon. |
| 11 | MR. MEGARO:  Good afternoon, Your Honor. |
| 12 | Patrick Mike Megaro, M-e-g-a-r-o, on behalf of |
| 13 | Mr. Brinson. |
| 14 | MR. GRAY:  Stephen Gray on behalf of |
| 15 | Mr. Brinson also. |
| 16 | MR. SMALLWOOD:  Allen Smallwood still here, |
| 17 | Judge. |
| 18 | THE COURT:  Mr. Smallwood, I did see your |
| 19 | two motions filed last evening.  We'll deal with them |
| 20 | at the end of today's proceedings. |
| 21 | MR. WILLIAMS:  Thank you, Judge. |
| 22 | THE COURT:  Mr. Brinson, I have two initial |
| 23 | questions for you, sir.  My first question is, did you |
| 24 | receive a copy of the revised presentence |
| 25 | investigation report dated October 31st, 2013, in a |

1    timely fashion?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Secondly, have you had a full,

4    fair, and complete opportunity to discuss the contents

5    of that revised presentence investigation report with

6    your attorneys?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Are there any issues?  I know

9    there is one objection here as to the revised

10   presentence report.

11             MR. MEGARO:  Your Honor, I have put my

12   objection in writing.  It's the two-level enhancement

13   for obstruction.  Other than that, there was an error

14   in my sentencing memorandum which I would like to

15   correct at this time.

16             THE COURT:  Please, if you would.

17             MR. MEGARO:  I believe it's paragraph 47.

18   I mistakenly included a one-level reduction for

19   acceptance of responsibility.  I believe that was a

20   typographical error, that should not be included, and

21   I would withdraw that at this time.

22             THE COURT:  All right.  In other words,

23   withdraw the entire paragraph?

24             MR. MEGARO:  Thank you.

25             THE COURT:  Is that correct?

1          MR. MEGARO:  Before I speak too soon, I

2    apologize, let me just triple-check.

3          THE COURT:  Yes, sir.

4          MR. MEGARO:  That's correct, Your Honor.

5          THE COURT:  All right.  Let me revise then

6    my response to that.

7          All right.  Any formal response from the

8    government with regard to the objection?

9          MR. JOHNSON:  The objections, Your Honor,

10   just the government stands on its sentencing

11   memorandum and what we laid forth in there, Your

12   Honor.

13         THE COURT:  Very well.  As to that

14   objection, the court notes for the record that in a

15   letter to the probation office dated August 26th,

16   2013, and in defendant's sentencing memorandum at

17   docket No. 123, the defendant stated one outstanding

18   objection to that revised presentence report.

19         The defendant objects to the two-level

20   enhancement for obstruction of justice in paragraph

21   27.  The defendant argues that he was found guilty of

22   a single count of obstruction of justice and it has

23   been considered in the base offense level calculation.

24   He contends that it is double-counted as a specific

25   offense characteristic, which is impermissible because

1    United States Sentencing Guideline Section 3C1.1 has

2    fully accounted for the harm.

3         The defendant argues that double-counting is not

4    permissible where the same conduct on the part of the

5    defendant is used to support separate increases under

6    separate enhancement provisions which necessarily

7    overlap, are indistinct, and serve identical purposes,

8    citing *United States v. Rucker*, 178 F.3d 1369, at page

9    1371, a Tenth Circuit decision from 1999.

10        Subsequently, the defendant objects to

11   the -- I'm sorry.  That's the one that was just

12   stricken so I will take that out as well.

13        This is actually kind of an interesting little

14   issue, if you like sentencing guidelines, and it's

15   fairly involved if one gets down into the weeds.

16   Pursuant to sentencing guideline Section 3C1.1 comment

17   at note 8, and sentencing guideline Section 3D1.2(c),

18   because the defendant is convicted of an obstruction

19   offense, as well as the offense with respect to which

20   the obstructive conduct occurred, the offenses are to

21   be grouped together and the greater of the offense

22   level for the obstruction offense or the offense level

23   for the underlying offense with a two-level

24   obstruction enhancement shall be used.

25        The court references the parties to *United*

1    *States v. Provenzano*, 1 Fed.Appx. 43, also 2001 WL

2    15609, a Second Circuit decision from 2001, which

3    upheld the use of the higher of the obstruction

4    calculation or the calculation for the underlying

5    offense increased by the two-level adjustment for

6    obstruction pursuant to sentencing guidelines Section

7    3C1.1, comment.(n.8), for a defendant convicted of

8    both an obstruction offense and the underlying

9    offense.

10        Ordinarily, it's necessary to determine the

11    offense level for the obstruction offense and the

12    underlying offense separately to ascertain the count

13    with the highest offense level.  However, in this

14    case, as the obstruction offense and the underlying

15    offense group and both offenses are calculated under

16    the Section 2G1.3 guideline, a separate determination

17    for the offense level for the obstruction count was

18    not necessary.  See United States Sentencing

19    Guidelines Section 3D1.3, comment.(n.2).

20        However, if the obstruction count were

21    calculated separately, the two-level enhancement for

22    obstruction of justice would not be applicable, nor

23    would the enhancement based upon defendant being

24    convicted under Title 18, United States Code Section

25    1591(b)(2) or the six levels of enhancements for other

1    specific offense characteristics applicable to the

2    underlying offense.

3         The offense level for the obstruction count in

4    itself is only 24.  Therefore, the offense level for

5    the underlying offense grouped together of 38 is

6    accurately -- excuse me -- the offense level for the

7    underlying offense of 38 prevails as accurately

8    reflected in the presentence report.

9         Clear as mud; right?  But it's an interesting

10   sentencing guideline issue that comes up when you

11   group these offenses together.

12        Now, that objection having been overruled, any

13   other objections before the court states its findings

14   with regard to the sentencing guidelines?

15             MR. JOHNSON:  Not from the United States,

16   Your Honor.

17             MR. MEGARO:  Nothing that I haven't already

18   briefed, Your Honor.

19             THE COURT:  Very well.  The total offense

20   level here, and the court finds, is 39.  Mr. Brinson's

21   criminal history category is an I.  The term of

22   custody under the statute under Count 1 is any number

23   of years to life.  Under the sentencing guidelines,

24   the term of custody for Counts 1, 2, 4, and 5 is 262

25   months to 327 months.  The term of custody as to

1    Counts 2, 4, and 5 under the statute is not less than

2    10 years or life -- or to life per count.

3         As to Count 3, the term of custody under the

4    statute is not more than five years.  The guidelines

5    provide for a term of custody for Count 3 of 60

6    months.  I take it that's up to 60 months or is that a

7    mandatory minimum?

8              PROBATION OFFICER:  That's the maximum,

9    Your Honor.

10             THE COURT:  All right.  So that's up to 60

11   months.

12        As to Count 6, the statute provides for a term

13   of custody of not more than twenty years.  As to Count

14   6, the guidelines provides for a term of custody of up

15   to 240 months.

16             *(Discussion held off the record)*

17             THE COURT:  All right.  One correction.

18   I'm told that the guideline sentence as to Count 3 is

19   60 months and not up to 60 months.

20        The term of supervised release under the statute

21   for Count 1 is not more than five years.  Under the

22   guidelines, the term of supervised release ranges from

23   two to five years.  Under the statute, the term of

24   supervised release on Counts 2, 4, and 5 is not less

25   than five years to life per count.  Under the

1  sentencing guidelines, the term of supervised release

2  as to Counts 2, 4, and 5 is five years to life per

3  count.  The term of supervised release as to Counts 3

4  and 6 under the statute is not more than three years

5  per count.  Under the sentencing guidelines, the term

6  of supervised release for Counts 3 and 6 ranges from

7  one to three years per count.

8       As to probation, under the statute, the

9  defendant is ineligible and the same holds true under

10  the guidelines.

11       The fine under the statute is not more than

12  $250,000 per count as to Counts 1 through 6.  The fine

13  under the guidelines ranges from $25,000 to $250,000.

14  Restitution in this case is the sum of $740.  The

15  special assessment under both the statute and the

16  guidelines is $100 per count on each of the six counts

17  of conviction for a total of $600.

18       Now, are there any objections?

19            MR. JOHNSON:  Not from the United States,

20  Your Honor.

21            MR. MEGARO:  Again, Your Honor, just what I

22  briefed earlier.  Other than that, no.

23            THE COURT:  Thank you.  Mr. Megaro, the

24  court would be pleased to hear any arguments you have

25  on behalf of Mr. Brinson, sir.

1          MR. MEGARO:  Certainly.  Thank you, Your

2     Honor.

3          THE COURT:  Yes, sir.

4          MR. MEGARO:  Your Honor, first, I would

5     like to acknowledge the presence of my client's family

6     and his parents and his brother who are here.  These

7     people have submitted letters of recommendation on his

8     behalf.  They have been extraordinarily helpful in

9     helping me do my job, and I would like to thank them

10    at this time for being there to support their son and

11    brother.

12          Judge, I look at my client.  He's just a child

13    himself.  I've read many, many, many medical journals,

14    psychological journals in which studies have been

15    conducted about maturity in young males.  And one

16    after another a lot of studies that I've read over the

17    years have indicated that the male mind does not fully

18    mature until somewhere around 26 to 27 years of age.

19    There's varying numbers but generally speaking it's in

20    the late 20s.

21          My client is still a child himself, and as with

22    most children an immature mind is unable to comprehend

23    the full nature of consequences of their actions.

24    When you combine an immaturity -- a mental immaturity

25    with drug abuse, even as something that might seem as

1    benign as marijuana, I think we all know and we all

2    recognize that drugs tend to rob a person of the

3    powers of intellect and reason.  When you combine that

4    with an immature mind, you have a situation where a

5    young man does not fully appreciate the consequences

6    of his actions.

7        Here, Your Honor, I see a young man, a family

8    man, who had a future.  He has very strong parents,

9    very strong loving family.  I think back on the last

10   ten years of my life and everything that has happened

11   in the last ten years and a lot has happened.

12   Certainly I'm not the same person I was ten years ago.

13       I try to frame this in the context of where

14   would I be if the last ten years of my life had simply

15   not occurred?  I try to imagine myself if I were

16   incarcerated for ten years and try to imagine who I

17   would be if life had stopped for me in 2003 and I had

18   stopped developing, I had stopped maturing as a

19   person, I had stopped all of the things in my life.

20       And when I consider ten years as a 23-year-old

21   man, this is -- forgive my lack of math -- but this is

22   approximately 40 percent of this young man's life.  A

23   ten-year minimum here would take 40 percent of this

24   young man's life and simply put it on hold.  If he

25   were given a ten-year minimum sentence in this case,

1    which is what I'm asking the court to do, he would

2    still be able to come out, be released from the Bureau

3    of Prisons, and still be able to lead a productive

4    life.

5         I recognize the guidelines calculation here and

6    the numbers are relatively frightening from this point

7    of view.  I understand that Congress has put certain

8    mandatory minimums on some of the crimes for which

9    Mr. Brinson has committed -- or has been found guilty

10   of rather.  I recognize that Congress has put a lot of

11   stock in the guidelines.  But sometimes, as the

12   Supreme Court has noted, the guidelines simply do not

13   match the offender or the offense.

14         Judge, this young man comes from a really good

15   family.  I would hate to see a future completely and

16   totally thrown away.  I think a ten-year mandatory

17   minimum sentence is enough to accomplish all of the

18   penological goals of 3553.  I think it's enough to

19   punish this young man by taking 40 percent of his life

20   lived so far.  I think it's enough to send a message

21   to him that this type of conduct should not be

22   tolerated.  It's enough to send a message to others in

23   the community that this type of conduct carries with

24   it severe ramifications.  And it's enough to -- it's

25   no more than necessary to accomplish all of these

1    other -- these goals that I've just outlined.

2         Other than that, Your Honor, I have extensively

3    briefed Mr. Brinson's background and the fact that

4    mitigating factors, a lack of aggravating factors that

5    I believe are applicable in this case.  I won't

6    belabor the court with repeating everything ad nauseam

7    that I've submitted in my sentencing memorandum.

8         But apparently a lot of people believe in this

9    young man and I believe in this young man, and I do

10   believe if given the chance he will not come back

11   before this court in the future.  Thank you.

12        THE COURT:  Thank you, sir.  Mr. Brinson,

13   the court would be pleased to hear any statements you

14   have on your own behalf, sir.

15        THE DEFENDANT:  Yeah.  I have no

16   statements, my lawyer said everything, so --

17        THE COURT:  Thank you, sir.  Mr. Johnson.

18        MR. JOHNSON:  Your Honor, as this court is

19   well aware of the facts and circumstances surrounding

20   this case as Your Honor presided over the six-day

21   trial, examined the documentary evidence, and heard

22   the witnesses' testimony, I will not belabor or

23   recount the voluminous evidence in this case but I

24   would rather highlight a few areas for the court's

25   consideration.

1          First and foremost, this is a child

2     sex-trafficking case.  Mr. Brinson was the chief

3     executive officer, he was the chief financial officer,

4     and the president of his own child sex-trafficking

5     business.  He preyed upon one of the most vulnerable

6     segments of our society, minor children.

7          Whether these young girls were running away from

8     something or whether they were running to something,

9     the defendant, as this court heard, promised them

10    love, affection, attention, and material items, he

11    induced and he enticed, he persuaded and he cajoled.

12    He convinced minor children to perform commercial sex

13    acts so that he could live the lifestyle of a pimp, to

14    be a player in the game.

15         The tools he used, Your Honor, were marijuana,

16    material items, shoes, and his charm.  Mr. Brinson not

17    only recruited, but he solicited, transported,

18    harbored, advertised, and marketed these children for

19    his own financial gain.  All they had to do to acquire

20    and retain Mr. Brinson's affection was to have sex

21    with adult men and then make sure Mr. Brinson got the

22    money that they had acquired in their commercial sex

23    acts.

24         He had full knowledge of his actions.  And as

25    this court is well aware, not only did he use minors

as prostitutes, he used other minors to help him

recruit minor prostitutes.  He then used social media

and the Internet to build and maintain and sustain his

business.

And even after Mr. Brinson was arrested for his

deplorable conduct, his criminal activities weren't

complete.  As this court is well aware, and the jury

convicted Mr. Brinson of, he attempted to subvert the

very criminal justice process that we're here today.

He contacted and attempted to have a Grand Jury

witness to not testify or to either testify falsely

before that Grand Jury.  He was doing everything he

could to cover his tracks.  No remorse, no regret.

The United States asks this court to send a

strong message to Mr. Brinson and any other

individuals that somehow believe it is either moral or

legal to have minor children perform sex acts for

adult men for their own profit.  This court has the

opportunity to send that message today.

The guidelines have been correctly calculated.

Congress has spoken on this issue.  The use of minor

children for sexual exploitation is not now, nor will

it ever be, acceptable.

To a few of the defense's arguments in their

sentencing memorandum, it is true that while the

defendant used marijuana and supplied marijuana to minor children, he did not traffic in marijuana and drugs in the conventional sense.  However, he trafficked in something even worse, he trafficked in 14- and 15-year-old girls.

The defense has asked you to think what would happen to Mr. Brinson for the next ten years, how that would affect him if he was given a mandatory minimum sentence.  I would like to ask the court to think what would happen to the three minor children in this case, specifically C.H. and A.H., what would have happened to them over the next ten years if Mr. Brinson hasn't preyed on them and prostituted them out for his own financial gain.

Your Honor, the United States asks this court to --

THE COURT:  Well, now wait.  A.H. was not prostituted out.

MR. JOHNSON:  C.H. was and A.H. was attempted to be prostituted out, Your Honor.

THE COURT:  Correct.

MR. JOHNSON:  We would ask the court to send an appropriate message in this case, a message that a guideline sentence in this case is appropriate, and send a message of deterrence.

1    Thank you, sir.

2         THE COURT:  The court will note that it has

3    received, in conjunction with the defendant's

4    sentencing memorandum, the letters that Mr. Megaro

5    referenced from family of Mr. Brinson.

6         Is there anything further before the court

7    states the sentence?

8         MR. MEGARO:  No, Your Honor.

9         MR. JOHNSON:  No, Your Honor.

10        THE COURT:  The court has reviewed the

11   defendant's sentencing memorandum at docket No. 123,

12   wherein the defendant requests an eight-level downward

13   variance to a total sentence of 120 months, the

14   mandatory minimum.  The defendant cites various

15   factors in support of his variance request to include

16   growing up in a poor single-parent home with an absent

17   father during a portion of his childhood, that his

18   crimes did not involve acts of or threats of violence

19   or distribution of narcotics, his lack of criminal

20   history, that a harsh sentence to promote deterrence

21   to others is ineffective, that he will be imprisoned

22   for ten years at a minimum; and further, protection

23   for the public is not necessary, that he is unlikely

24   to re-offend, and that excessive imprisonment would be

25   counterproductive and hinder his ability to maintain

1    existing familial relationships.

2         The court has also reviewed the government's

3    response to the defendant's sentencing memorandum at

4    docket No. 124, wherein the government opposes the

5    defendant's request for variance and requests a

6    sentence within the applicable guideline range.  The

7    court finds that many of the factors cited by the

8    defendant are not extraordinary to the extent that

9    they warrant a variance.

10        However, based upon the totality of the factors

11   in this case, to include the defendant's age, his lack

12   of criminal history, and the specific facts of the

13   offenses in this case, the court finds that a sentence

14   of 262 to 327 months is greater than necessary to meet

15   the purposes of sentencing promulgated in Title 18

16   United States Code Section 3553(a).

17        In particular, the court references the factors

18   set forth in subsections 2(a), the need to provide

19   just punishment for the offenses; 2(b), the need to

20   afford adequate deterrence; and 6, the need to avoid

21   unwarranted sentencing disparities among defendants

22   with similar records who have been found guilty of

23   similar conduct.

24        In two similarly charged and relatively recent

25   Tenth Circuit cases, each involving multiple teenage

victims who are violently forced and/or threatened with death to act as prostitutes, the defendants received sentences less than the low end of the applicable guideline range in this case.

The court references *United States v. Wild*, 143 Fed.Appx. 938, 2005 WL 1840172, a Tenth Circuit case from 2005, upholding three concurrent 120-month sentences where the defendant took three females, ages 14 to 16, across state lines and forced them to prostitute themselves with threats of death and withholding of food and shelter; and *United States v. Sutherland*, 191 Fed.Appx. 727, 2006 WL 2328752, a Tenth Circuit case from 2006, which upheld a 240-sentence where the defendant forced three minor females, two of whom who were under 16, to work as prostitutes by use of violence and threats.

Therefore, the court finds that there are factors in this case that separate the defendant from the mine run of similarly-situated defendants in similar cases. The court bears in mind that in addition to the conspiracy to engage in sex trafficking of children, as referenced by the government, the jury found the defendant here guilty in Count 6 of obstruction of justice.

Accordingly, the defendant's motion for variance

contained in his sentencing memorandum at docket

No. 12 is granted in part and denied in part and the

court will vary downward three levels to an offense

level of 36.  Combined with the defendant's criminal

history category of I, the variance guideline range of

imprisonment is 188 to 235 months.

The court recognizes that the United States

Sentencing Guidelines are advisory and are not

mandatory, but has considered the sentencing

guidelines, along with all of the factors set forth in

Title 18, United States Code Section 3553(a), to reach

an appropriate and reasonable sentence in this case.

In determining a sentence, this court has considered

the nature of the offenses and the defendant's

criminal history and his personal characteristics.

This case involved the defendant acting as the

pimp of one 14-year-old female, date of birth November

29, 1997, by marketing sexual services to be performed

by the minor victim on Web sites, negotiating prices

for the victim's services, providing transportation

and hotel rooms for the victim to meet customers to

perform sexual acts, and retaining a portion of the

profits made by the victims.

Further, the defendant attempted to recruit the

16-year-old sister of the victim into his prostitution

business.  In addition, the defendant utilized a 17-year-old female to aid him in recruiting females to work as prostitutes and obstructed the administration of justice by directing another party not to appear to testify against him before a Grand Jury despite her having been subpoenaed to appear.

The defendant's young age, his minimal criminal history, and abundant familial support are mitigating factors.  The court has afforded equal weight to the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment.

Based upon the aforementioned factors, a sentence toward the middle of the guideline range will result in a sentence that is sufficient, but is not greater than necessary, to achieve the goals of sentencing mandated by Congress, including adequate deterrence for this defendant and to others and protection of the public.

A significant term of supervised release is appropriate based upon the nature of the offenses and will allow the defendant time to reintegrate into the community upon release from imprisonment to obtain any additional substance abuse treatment and vocational training as needed and to be monitored for future law

1   violations.

2        Sentencing disparities among defendants were

3   considered in determining an appropriate sentence in

4   this case and restitution is mandatory.

5        Mr. Brinson, if you'll rise, please.  In

6   accordance with applicable law, this court hereby

7   imposes the following sentence:

8        It is the order and judgment of this court that

9   the defendant, Tarran Arnel Brinson, is hereby

10  committed to the custody of the Bureau of Prisons to

11  be imprisoned for a total term of 204 months.  The

12  sentence shall consist of 204 months as to each of

13  Counts 1, 2, 4, 5, and 6, and 60 months as to Count 3,

14  said counts to run concurrently, each with the other.

15       The court recommends that the defendant be

16  placed in a facility as close to Tulsa, Oklahoma, as

17  possible, where he may obtain vocational training and

18  will allow him the opportunity to be treated in the

19  Bureau of Prisons' residential substance abuse

20  treatment program.

21       The defendant shall pay restitution in the total

22  amount of $740 to victim C.H. as listed in paragraph

23  66 of the presentence report to which there's been no

24  objection.  And as authority for the amount of

25  restitution in this case, which is determined by the

amount collected, see *United States v. Robinson*, 508
Fed. Appx. 867, at pages 870 through 871; also 2013 WL
150181 (11th Cir. 2013).

Based upon the defendant's financial profile as
outlined in the presentence report, the court finds
that the defendant does not have the ability to pay a
fine, and therefore, no fine will be imposed.

Now, any monetary penalty is due in full
immediately but is payable on a schedule of the
greater of $25 quarterly or 50 percent of income
received from any source while imprisoned, to include
income pursuant to the federal Bureau of Prisons'
inmate financial responsibility program if the
defendant voluntary participates in that program.  If
a monetary balance remains, payment is to commence no
later than 60 days following release from imprisonment
to a term of supervised release in equal monthly
payments of $100, or 10 percent of net income; that
is, his take-home pay, whichever is greater, over the
duration of the term of supervised release and
thereafter as prescribed by law for as long as some
debt remains.  Not withstanding establishment of a
payment schedule, nothing shall prohibit the United
States from executing or levying upon property of the
defendant discovered before or after the date of this

1    judgment.   Interest on the restitution will be waived.

2              Upon release from imprisonment, the defendant

3    shall be placed on a term of supervised release for a

4    period of five years as to Count 1, ten years per

5    count as to each of Counts 2, 4, and 5, and three

6    years as to each of Counts 3 and 6.   Said terms of

7    supervised release shall run concurrently, each with

8    the other, for a total term of ten years.   Should

9    those terms of supervised release be revoked, an

10   additional term of imprisonment of up to five years as

11   to Count 1 and two years per count as to Counts 3 and

12   6 could be imposed at each revocation.

13             As to Counts 2, 4, and 5, if the defendant

14   commits any criminal offense under Chapter 109A, 110,

15   or 117, or Section 1201 or 1591 for which a term of

16   imprisonment longer than one year can be imposed, the

17   court shall revoke the supervised release and require

18   the defendant to serve a term of imprisonment of not

19   less than five years.   Upon revocation for other

20   reasons, the term of imprisonment shall not exceed

21   five years at each revocation.

22             Immediately upon release from confinement, but

23   in no event later than 72 hours thereafter, the

24   defendant shall report in person to the probation

25   office in the district to which he is released.   While

1    on supervised release, the defendant shall not commit

2    another federal, state, or local crime.

3         The defendant shall comply with the requirements

4    of the Sex Offender Registration and Notification Act,

5    Title 42 United States Code Section 16901, et seq., as

6    directed by the probation officer, the Bureau of

7    Prisons, or any state sex offender registration agency

8    of a state in which he resides, works, is a student,

9    or was convicted of a qualifying offense.

10        The defendant is prohibited from possessing a

11   firearm, ammunition, destructive device, or other

12   dangerous weapon.

13        The defendant shall, at the direction of the

14   United States probation officer, cooperate with and

15   submit to the collection of a DNA sample for

16   submission to the combined DNA index system.

17        Further, the defendant shall not unlawfully use

18   or possess a controlled substance.  The defendant

19   shall submit to one drug test within 15 days of

20   release on supervised release and at least two

21   periodic drug tests within 120 days for use of a

22   controlled substance.  That's all to say that when

23   you're released, a probation officer or an office will

24   keep track and take drug tests to make sure you're

25   staying away from drugs.

1          The defendant shall comply with the standard

2     conditions that have been adopted by this court and

3     shall comply with the following additional special

4     conditions:

5          Number one, the special search and seizure

6     condition; number two, the special substance abuse

7     treatment and testing condition; number three, the

8     special sex offender conditions; number four, the

9     special financial conditions; and number five, the

10    special workforce development condition.

11         It is further ordered that a $100 special

12    monetary assessment per count of conviction for a

13    total of $600 be paid immediately to the United States

14    Court Clerk for the Northern District of Oklahoma.

15         Now, Mr. Brinson, as I'm sure you've been

16    advised because you have appellate lawyers sitting

17    next to you, I have a duty to advise you that you have

18    a right to appeal your conviction and your sentence.

19    Do you understand, sir, that any such appeal must be

20    filed within 14 days of the date the judgment is

21    entered?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  And further, if you wish to

24    appeal and you cannot afford an appeal, do you

25    understand, sir, that there are forms in the court

1    clerk's office to request to appeal in forma pauperis?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  I believe we have three

4    preceding indictments to dismiss?

5              MR. JOHNSON:  Yes, Your Honor.  We so move

6    at this time.

7              THE COURT:  Upon the oral motion of the

8    government, the original, the superseding, and the

9    second superseding indictments are dismissed.

10        Is there anything further here?

11             MR. JOHNSON:  Your Honor, you mentioned

12   taking care of Mr. Smallwood's motion.

13             THE COURT:  Yes.  Thank you very much for

14   reminding me.

15        I take it there is no objection to the motions?

16             MR. JOHNSON:  Not from the United States,

17   Your Honor.

18             THE COURT:  Clearly, the application to

19   withdraw as attorney of record at document No. 125 is

20   granted.  Mr. Smallwood asked to withdraw after

21   sentencing.  That having been completed, document

22   No. 125, the motion to withdraw as attorney of record,

23   is granted.

24        Now, as to the second motion, request for

25   substitution of counsel, I was just procedurally

1  interested, Mr. Smallwood -- that's docket No. 26 --

2  insofar as the Brownstone Law Firm has already entered

3  an appearance pro hac vice, is it necessary that a

4  request for substitution of counsel be granted?

5  MR. SMALLWOOD:  Probably not, Judge.  I

6  just did that out of an abundance of caution to make

7  sure the court --

8  THE COURT:  Well, belt and suspenders are

9  not to be scoffed at, as we all know.  So although I

10  don't know that it's necessary, I take it there's no

11  objection?

12  MR. MEGARO:  No, Your Honor.  Our firm has

13  been hired to do the appeal.

14  THE COURT:  Yes.

15  MR. MEGARO:  So we will file the notice of

16  appeal and prosecute the appeal through the Tenth

17  Circuit.

18  THE COURT:  Very well.  Mr. Smallwood's

19  request for substitution of counsel at document No. 26

20  is granted out of an abundance of caution.

21  Is there anything further here?

22  MR. JOHNSON:  Not from the United States,

23  Your Honor.

24  THE COURT:  Well, it's very clear to this

25  court, Mr. Brinson, that you have a great deal of

1    ability and I just ask that you use this to turn your

2    life around.  I think everyone here understands the

3    raw ability that you have.  Whatever happens on your

4    appeal, this is an opportunity for you to take this

5    and make something positive out of it and certainly

6    hope you do that.

7            We are adjourned.

8                    *(The proceedings were concluded)*

1                    C E R T I F I C A T E

2

3

4              I, Brian P. Neil, a Certified Court Reporter

5    for the Northern District of Oklahoma, do hereby

6    certify that the foregoing is a true and accurate

7    transcription of my stenographic notes and is a true

8    record of the proceedings held in above-captioned

9    case.

10

11             I further certify that I am not employed by

12   or related to any party to this action by blood or

13   marriage and that I am in no way interested in the

14   outcome of this matter.

15

16             In witness whereof, I have hereunto set my

17   hand this 4th day of December 2013.

18
                          s/ Brian P. Neil
19                 _____
                        Brian P. Neil, RMR-CRR
20                      United States Court Reporter

21

22

23

24

25